Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 6917 | **DATE** | 6/14/2000 |
| **CASE TITLE** | BENNETT vs. ROBERTS | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing held and continued to 10/17/00 at 9:15 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: the Court denies defendants' motion to strike plaintiff's objections and adopts the Report of Magistrate Judge Ashman. As a result, plaintiff's motion to certify a class action is denied. Plaintiff's expert to be deposed in Chicago on or before 7/28/00. Defendants are given until 8/29/00 in which to name their experts. Defendants' experts are to be deposed on or before 10/17/00. All discovery to be completed on or before 10/17/00.

(11) ☒ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN 15 2000 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| TBK | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| VALERIE BENNETT, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MARY ROBERTS, )<br>MARSHALL ASINALL, )<br>TIMOTHY COSTELLO, )<br>LIVIA McCAMMON, )<br>O.C. DAVENPORT, BRIAN BARNES, )<br>and RUDY CARL, (Directors) in their )<br>official and individual capacities as )<br>members of the Board of Education, )<br>School District 203, DuPage County, )<br>)<br>Defendants. ) | No. 96 C 6917<br>Paul E. Plunkett, Senior Judge |

## MEMORANDUM OPINION AND ORDER

Before the Court is Magistrate Judge Martin C. Ashman's Report and Recommendation ("Report") recommending that the Court deny plaintiff Valerie Bennett's motion to certify a class of plaintiffs in her suit against the named Directors[1] of School District 203 ("defendants" or "District"). Bennett filed a timely objection to the Report and defendants have filed a timely response to plaintiff's objections in accordance with Fed. R. Civ. P. 72. In conjunction with their response, defendants also filed a motion to strike plaintiff's objections. For the reasons provided in this Memorandum Opinion and Order, the Court denies defendants' motion to strike, finds plaintiff's objections without merit and adopts the Report in its entirety.

---

[1] The named directors of the Board of Education of School District 203 are Mary Roberts, Marshall Asinall, Timothy Costello, Livia McCammon, O.C. Davenport, Brian Barnes, and Rudy Carl.

-1-

## Standard of Review

This matter was referred to Magistrate Judge Ashman by Judge Williams[2] pursuant to Rule 72(b) of the Federal Rules of Civil Procedure. The Court is required to "make a de novo determination . . . of any portion of the magistrate judge's disposition to which specific written objection has been made." FED. R. CIV. P. 72(b). "The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." Id.

## Facts

Bennett filed a three-count complaint against the directors of District 203 on behalf of herself and other similarly situated minorities who applied for a teaching position with the District. In her second amended complaint, Bennett claims that the District engaged in discriminatory practices prohibited by 42 U.S.C. §§ 1981, 1983, Title VII of the Civil Rights Act, 42 U.S.C. § 2000(e), et seq., and the equal protection clause of the Fourteenth Amendment. Bennett seeks to certify a class comprised of all minorities, including those employed part-time by the District, who are certified to teach grades K-12 and who applied for full-time teaching positions with schools located in District 203, but were rejected solely because of their race.

School District 203 is a public school unit comprised of twenty-one elementary, junior high and high schools. (Defs.' Resp. at 2.) Michael L. Kiser, district counsel and assistant superintendent for District 203, submitted an affidavit to the magistrate on District 203's hiring procedures and

---

[2] This case was assigned to this Court on December 15, 1999, when Judge Williams was appointed to the Court of Appeals for the Seventh Circuit.

policies. (Id., Ex. 1, Kiser Aff.) According to Kiser, due to the large volume of applications for teaching positions received by the District, each fall applicants for teaching positions were required to submit a data sheet, which summarized the applicant's qualifications and skills. This sheet does not identify the applicant's race. (Id., Ex. 1, Kiser Aff. ¶ 5.) When a school had a vacancy for a teaching position, the building principal would select applicants for interviews from a print-out of the information contained on the applicant data sheets. (Id. ¶ 7.) Each building principal had the discretion to determine the criteria for selection of the candidates and could request building personnel to assist the principal in identifying a candidate's strengths and/or weaknesses. (Id. ¶¶ 7, 9.) The building principal would then recommend the hiring of a particular candidate to Kiser, who typically recommended that applicant for hiring to the Board of Education, which has the exclusive authority to hire employees. (Id. ¶ 11.)

Bennett, who is black, submitted an applicant data sheet in fall of 1994 for a teaching position in District 203. Around that time, Bennett interviewed for two District 203 positions. The first one was for a part-time teaching position at an elementary school. (Pl.'s Sec. Am. Compl. ¶ 9.) She was interviewed by the principal and three other staff members, all of whom were white. Bennett did not receive an offer for that position. At or around that same time, Bennet applied for a full-time fifth grade teaching position at a different school in District 203. (Id. ¶ 33(j).) She was interviewed by that school's principal, who was white. Bennett was not offered that position either.

Bennett claims in her objections that the magistrate inappropriately limited the facts (and his decision) to those two circumstances. (Pl.'s Objections at 2.) She asserts that her complaint covers District 203's "refusal" to give Bennett an interview in 1995 after she was identified as a minority in her two interviews in late 1994. (Id.) While Bennett's complaint does not clearly identify this

-3-

claim, she does allege generally that she and other minorities were excluded from the interview process because defendants used "non-job related criteria" to exclude them. (Pl.'s Sec. Am. Compl. ¶ 33(j)). According to Bennett's objections, this criteria included or was limited to the use of a white-staff screening committee, which the magistrate did address in his decision. Furthermore, the Court's own review of the facts does not further support a class action for minorities like Bennett who allegedly were denied opportunities to attend additional interviews in District 203 after they had been "screened" in an interview by white-staff committees. In fact, as class representative, Bennett has not demonstrated that she properly applied for positions in District 203 after the 1994-95 school year. While she claims that her application data file from November 1994 was enough to keep her in the computer generated applicant pool for the 1995-96 school year, defendants flatly reject that claim with evidence of its hiring system. (See Defs.' Resp. at 3; id., Ex. 1, Kiser Aff. ¶ 16.) According to the District's hiring procedure, Bennett was not within the 1995-96 applicant pool from which District 203 schools could pull applicants to interview for vacant positions. (Id.; id., Ex. 1, Kiser Aff. ¶¶ 5, 16.) These facts belie Bennett's claim she "was eligible for other jobs long after the fall 1994 interviews and was denied opportunities to be interviewed for other jobs in the . . . District." (Pl.'s Objections at 2.) In any event, Bennett's objection on the magistrate's presentation of the facts is without merit because her claim that minorities were denied interviews is evaluated by the magistrate and this Court as a part of her class discrimination claim that the District screened its minority applicants.

## Discussion

In order to certify a class, plaintiff must satisfy the requirements of Federal Rule of Civil Procedure ("Rule") 23(a) and (b). As the magistrate correctly noted, our inquiry is limited to whether Rule 23's requirements are satisfied, not the ultimate merits of the claim. Koch v. Stanard, 962 F.2d 605, 607 (7th Cir. 1992). It is plaintiff's burden to demonstrate that each of the requirements for class certification is satisfied. See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613-14 (1997).

Rule 23 gives a two-pronged analysis to determine whether a class action is appropriate. First, "a Title VII class action, like any other class action, may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." General Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 161 (1982). These requirements are as follows:

> (1) the class is so numerous that joinder of all members is impracticable [numerosity], (2) there are questions of law or fact common to the class [commonality], (3) the claims or defenses of the representative parties are typical of the claims or defense of the class [typicality], and (4) the representative parties will fairly and adequately protect the interests of the class [adequacy].

FED. R. CIV. P. 23(a); see Windsor, 521 U.S. at 613. Plaintiff must also satisfy one of the three subsections of Rule 23(b)(1)-(3). Bennett relies on Rule 23(b)(2) in paragraph 4(d) of her second amended complaint. This subsection permits certification when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." FED. R. CIV. PRO. 23(b)(2).

## Rule 23(a) Requirements

The magistrate began his analysis with the four requirements under Rule 23(a). While he found Bennett satisfied the numerosity requirement, he held that she failed to demonstrate any of the remaining three requirements: commonality, typicality and adequacy of representation. Bennett objects to the magistrate's findings on these requirements, claiming that she has satisfied all three.

### Commonality and Typicality

Commonality requires that there be questions of law and fact common to the class. Rosario v. Livaditis, 963 F.2d 1013, 1017 (7th Cir. 1992). Some factual variation among the class grievances will not defeat a class action. Id. "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." Id. at 1018.

Typicality is closely related to commonality. Falcon, 457 U.S. at 157, n.13; Rosario, 963 F.2d at 1018. A claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'" Rosario, 963 F.2d at 1018 (citation omitted). Even if based on the same legal theory, the claims must all contain a common core of allegations. See Allen v. City of Chicago, 828 F. Supp. 543, 553 (N.D. Ill. 1993).

Bennett argues that the magistrate failed to recognize the common nucleus of facts and typical conduct presented in her complaint to support the commonality and typicality elements of Rule 23. (Pl.'s Objections at 3-6.) In her objections, she complains generally that her allegations that the District refused to hire minorities and failed to implement an affirmative action plan demonstrate commonality and typicality. (Id. at 6.) However, as the magistrate correctly noted,

these averments of generalized discrimination in hiring are not enough to satisfy commonality and typicality. (Report at 7.) As the court in Falcon stressed, "the mere fact that an aggrieved private plaintiff is a member of an identifiable class of persons of the same race . . . is insufficient to establish his standing to litigate on their behalf all possible claims of discrimination against a common employer." 457 U.S. at 159. Bennett has done little more than make generalized allegations of broad types of discrimination by the District. While she alleges somewhat more specific claims, such that the District excluded minority teachers from full-time teaching positions, screened minority applicants using all white screening committees, used subjective hiring criteria, and provided no written documentation for their employment decisions (Pl.'s Sec. Am. Compl. ¶¶ 33(a),(c), (j)), these claims still do not overcome the individualized nature of each class member's claim. As the magistrate found, "whether a hiring decision . . . was discriminatory would depend on too many individualized factors, such as the applicant's qualifications, the number of applicants applying for a particular position, each applicant's previous work performance and duties, the qualifications of the employees actually selected for each position for which each applicant was not selected, whether the employment and hiring conditions were similar from school to school, and so forth." (Report at 8-9.) Bennett has failed to show this Court why these varied and individualized factors do not cut against class certification. Accordingly, we agree with the magistrate that the purpose of the class action device would be frustrated by the mini-trials required in this situation. Moreover, as noted by Magistrate Ashman, the potential class seeks damages that would presumably include back pay and lost wages, which would require further review of individualized factors. All of these factors undermine Bennett's argument that her claim is common and typical of the class.

The fragmented nature of the claims of each purported class member is further amplified by the lack of a centralized hiring decision maker. While the Board of Education has the exclusive authority under Illinois law to hire employees, the facts show that each building principal uses his or her discretion in determining the criteria for selecting and recommending candidates to the Board for teaching positions. In fact, this point is best demonstrated by Bennett's personal situation in the District: In one interview she was allegedly interviewed by a "white screening-committee," while in another interview at a different school, she was not. While we understand that some factual variations should not defeat a finding of commonality or typicality, Patterson v. General Motors Corp., 631 F.2d 476, 481 (7th Cir. 1980), the individualized claims of the purported class far outweigh any common or typical elements represented in Bennett's claim that the District discriminated against her and other minorities in hiring.

Bennett further argues that commonality and typicality are present in her allegation that District failed to follow state law by refusing to implement an affirmative action plan.[3] (Pl.'s Objections at 5, 6; Pl's Reply at 2-4.) Section 10-20.7a of The School Code states that a school board has an obligation "[t]o develop and implement, by 1991, a policy of recruitment and hiring of minority teachers, other certificated employees and non-certificated employees, including custodians, lunch room staff and teachers aides." 105 ILL. COMP. STAT. 5/10-20.7a (West 2000). Bennett claims in her reply brief that "new" evidence not before the magistrate proves the District failed to

---

[3] We are unable to locate this claim in Bennett's second amended complaint (or her EEOC charge). She states that it is located somewhere in paragraphs 33(a)-33(m) of her second amended complaint. The closest the Court found to this claim is paragraph 33(l): "Defendants failed to follow its own affirmative action plan, programs and policies as equal opportunity employers under state law." (Pl.'s Sec. Am. Compl. ¶ 33(l).) While this allegation does not appear to be the same one put forth in her objection, we shall construe it as appropriately plead for purposes of our discussion.

-8-

implement an "affirmative action plan" in violation of state law. (Pl.'s Reply at 1-2.) This evidence, she claims, further demonstrates that this action is worthy of class certification of minority applicants. According to Bennett, the magistrate did not see the minutes of a District board meeting on February 17, 1992, where the board approved "revised policy #4116: Non-discrimination in Minority Recruitment & Hiring." (Id., Ex. 4.) This policy, in part, stated that the District "shall continue to recruit qualified minority job applicants and to hire qualified job applicants on a non-discriminatory basis . . . ." (Id.) We fail to see how this evidence helps plaintiff's claim for class certification or how it serves as proof that the District violated state law. For one, Bennett still does not overcome the highly individualized nature of each purported class member's claims by alleging a broad-based failure to recruit and hire minority teachers. This claim does little more than her general allegation of discriminatory practices in hiring to give the potential class a cohesive claim. Furthermore, while we do not review the merits of the litigation at this point, the "new" evidence cuts against Bennett's claim that the District violated state law. Rather, the February 1992 meeting minutes demonstrate that the District did implement a policy pursuant to state law. Nothing in The School Code section cited by the parties states that this policy must be an affirmative action plan, and on its face, it appears that the District's generic policy fulfilled the requirements of state law.

Bennett further argues that the magistrate failed to address her claim that the District's hiring practices, policies and customs for full-time classroom teachers had a disparate impact on the recruitment and hiring of Bennett and other minorities.[4] (Pl.'s Objections at 5; Pl.'s Sec. Am.

---

[4] There is some question as to whether Bennett's disparate impact claim is properly before this Court. (See Defs.' Resp. at 10.) The allegations contained in this claim appear beyond the scope of Bennett's EEOC charge and it is unclear whether it is "like or reasonably related to" the allegations of the EEOC charge and "grow out of such allegations." Jenkins v. Blue Cross Mut. Hosp. Ins., Inc., 538 F.2d 164, 167 (7th Cir. 1976) (en banc) (citation omitted). We decline to decide

Compl. ¶ 34[5].) In an apparent attempt to support this claim, Bennett submits statistics calculated by her expert. She argues that the magistrate improperly rejected her expert report which concluded that race had to be a factor in hiring because so few minorities were employed by the District. While the magistrate did not discuss this report in his opinion, he did imply in a footnote that evidence of racial statistics was not enough to support commonality in this case. (Report at 8, n. 4.) We agree. Even if we accepted Bennett's expert's report as fact, these statistics still do nothing bind together the individualized nature of claims of the prospective class and the lack of a centralized hiring decision maker. See Betts v. Sundstrand, No. 97 C 50188, 1999 WL 436579, at *7 (N.D. Ill. June 21, 1999) (holding that across-the-board class allegations of disparate impact and their proffered statistics do not overcome the essentially individualized nature of the claims plaintiffs assert.) Plaintiff's arguments focus on the use of statistics to prove liability for disparate impact. (Pl.'s Objections at 4-5.) However, the merits are not at issue at this stage, and we find the statistics do not help Bennett establish commonality or typicality on this claim.

## Adequacy of Representation

Even if we found the magistrate's ruling in error on the commonality and typicality factors, Bennett must still clear the adequacy of representation factor to satisfy Rule 23(a)'s requirements. She did not do so before the magistrate, and she has presented no objections that lead us to conclude

---

this issue today because the merits of this case are not presently before us and it does not matter in the end for purposes of class certification.

[5] This paragraph was numbered as 30 in plaintiff's Second Amended Complaint, although numerically it is the 34th paragraph. To avoid confusion with the other paragraph 30, we shall refer to it as the sequentially correct number, 34.

that the magistrate was incorrect in his assessment that Bennett would fail to adequately and fairly represent the interests of the class as a whole.

The adequacy of representation is determined by a showing that the named plaintiff's counsel is qualified to competently pursue the putative class action and that the members of the putative class do not have antagonistic or conflicting interests. See Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d 584, 598 (7th Cir. 1993). The magistrate found that Bennett failed to make the requisite showing on both of these elements.

Plaintiff objects to the magistrate's finding that her delay in moving for class certification was a proper basis for denying certification. (Pl.'s Objections at 9-12.) Plaintiff filed her complaint against the District in October 1996 and filed her motion for class certification almost three years later in August 1999. While Bennett argues that her delay was excused because of an appeal to the Seventh Circuit, the remand order came in early November 1998, and she only moved for certification the following summer once the district court ordered her to so. While the circumstances of the procedural history of this case do lend some justification for Bennett's delay and may not alone render Bennett an inadequate representative, the magistrate's findings, in conjunction with other factors discussed herein, are sound that Bennett is not an adequate representative.

The magistrate also found that Bennett cannot adequately represent the class because on certain claims she is not a member of the class and did not suffer injury. As the Supreme Court has repeatedly held, "a class representative must be a part of the class and possess the same interest and suffer the same injury as the class member." Falcon, 457 U.S. at 156. Bennett seeks to represent minority part-time teachers employed by the District. Bennett was never hired as a part-time teacher and cannot represent those who were because she did not suffer the injury alleged. She also seeks

certification of a class of individuals who were certified to teach grades K-12. However, Bennett was not certified to teach all of these grade levels and, therefore, did not suffer the same injury as those teacher who have the requisite certification. See East Texas Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403-04 (1977) (failure to meet a job's minimal qualifications renders the plaintiff ineligible to represent a class who were injured.) Plaintiff responds to this point by suggesting that the class be redefined to those teachers certified to teach grades K-9, an admission that she cannot adequately represent teachers certified for grades 10-12. We decline to modify Bennett's proposed class because redefining it still would not assist Bennett on the other certification factors.

Bennett's capabilities to represent the class are further called into doubt by her dilatory conduct and that of her counsel. Not only was Bennett ordered to move for class certification after substantial time had passed, she missed the filing deadline imposed by the court and failed to obtain leave of court to submit her late motion and brief. (Report at 4, n.3; 12.) Bennett's counsel has also played fast-and-loose with the procedural rules of this district. As defendants raised in their motion to strike, Bennett currently has no local counsel. When Bennett filed her complaint, one of her attorneys, her husband Philip W. Bennett, maintained an office in this district so there was no reason to designate local counsel. In October 1999, Bennett gave notice to the clerk of court of Philip's new address in Texas. Philip no longer has an office in Illinois that accepts filings and no other attorney doing business in this district has appeared on Bennett's behalf. Yet, Bennett continues to claim that Philip serves as her local counsel. However, pursuant to this District's Local Rule 83.15, Bennett has no local counsel and we are entitled under L.R. 83.15(b) to strike any documents filed without designation of local counsel. While we decline to strike Bennett's objections on this basis (and

hereby deny defendants' motion to strike), Bennett is advised that this Court will not accept any future filings until local counsel has been designated.

Bennett's claim regarding Philip Bennett's status as her local counsel is also relevant to the magistrate's finding on adequacy of counsel. Magistrate Ashman found that the potential conflict of interest in Bennett's husband serving as class counsel was another factor in his decision to deny class certification. (Report at 13.) He held, based on Seventh Circuit case law, that it is inappropriate for a class representative to be related to or a business associate of the class counsel because of the concern that such counsel would fail to aggressively and impartially represent the non-family/business associate class members. (Id.) Bennett responds that Philip only serves as local counsel (which clearly is not the case) and that her "lead" counsel, Douglas Grimes, is not related to Bennett. (Pl.'s Objections at 7.) While we decline to launch into a discussion on the difference between local and lead counsel, it is fair to say that Philip Bennett is not merely a "drop-box" or passive participant in this litigation to qualify as local counsel. Rather, in all of the papers before this Court, and according to defendants, Philip Bennett has been the lead or only acting counsel issuing and presenting arguments, motions and discovery on this case. While Bennett offers to have her husband withdraw from representation to clear this hurdle (Pl.'s Objections at 7), we find no reason for it given the other incurable defects in the class claims.

The magistrate concluded his discussion of this factor with his concern that members of the putative class may have antagonistic or conflicting interests. (Report at 14.) This conflict would arise if certain members competed with Bennett and/or one another for the same position. Thus, some members would be seeking relief pertaining to the same positions. (Id.) Plaintiff argues that there is "no logical basis for this finding" because there is no evidence that "minorities would likely

compete against one another." (Pl.'s Objections at 8.) However, based on Bennett's class definition, which covers five years and may contain 200 members, it was not illogical for Magistrate Ashman to conclude that some of these members sought the same position as one another and/or Bennett. Plaintiff's objection is without merit because she presents no evidence that this antagonistic element is not present in the proposed class.

In a final pitch to win on this factor, Bennett claims that while she may not be the best representative for the proposed class, she comes the closest to serving as an adequate representative because "the court knows of no other person that has met the statutory requirements of Title VII during the relevant time period." (Pl.'s Objections at 9.) Bennett asserts, without reference to a shred of law, that class representation is handed-out to the person or persons who best fit the bill: "[A]s a matter of law Ms. Bennett meets the adequacy requirements because she can serve the class better than anyone known to the court. The court has a duty to protect the rights of parties not present." (Id.) First, it is not this Court's responsibility or "duty" to discover who may also serve as a class representative to protect the proposed class. Those obligations belong to Bennett, who has failed on those fronts. Second, adequacy of representation is not decided on a sliding-scale, but on a set of objective factors reviewed by the magistrate and this Court. We have reviewed these factors and Bennett misses the mark on this and the commonality and typicality requirements under Rule 23(a). Bennett does not adequately represent the class even if she is the best they have to offer.

## Rule 23(b) Requirement

Based on his conclusion that Bennett failed to meet Rule 23(a)(2)-(4), the magistrate did not address the merits of the second prong of the Rule 23 analysis for class certification under subsection

(b). Bennett does not object to the magistrate's decision on this or address this prong in her objections. We shall not address it either because Bennett's failure to clear the hurdles under Rule 23(a) end the inquiry.

## Conclusion

For the reasons stated herein, the Court denies defendants' motion to strike plaintiff's objections and adopts the Report of Magistrate Judge Ashman. As a result, plaintiff's motion to certify a class action is denied.

**ENTER:**

_____
UNITED STATES DISTRICT JUDGE

DATED: 6-14-00