# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 96 C 6917 | DATE | 3/15/2001 |
| CASE TITLE | VALERIE BENNETT vs. MARY ROBERTS | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]    Status hearing held. Enter Memorandum Opinion And Order. Defendants' motion for summary judgment is granted on all claims [97-1], and plaintiff's motion for summary judgment is denied [96-1]. Defendant's motion to bar testimony [99-1] is denied. Plaintiff's motion to strike defendants' motion to bar testimony of Dr. Robert Hill [107-1] is denied. Defendants motion to modify briefing schedule is denied as moot [103-1].

(11) ☒ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | MAR 1 6 2001 date docketed | |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | 117 |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 01 MAR 15 PM 6: 0_ | |
| LG | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| VALERIE BENNET, | ) |
| Plaintiff, | ) |
| | ) No. 96 C 6917 |
| v. | ) |
| | ) MAR 1 6 2001 |
| MARY ROBERTS, et. al., | ) Judge John W. Darrah |
| Defendants. | ) |

DOCKETED MAR 1 6 2001

## MEMORANDUM OPINION AND ORDER

Plaintiff, Valerie Bennett, commenced an action against defendants, Mary Roberts, Marshall Asinall, Timothy Costello, Livia McCammon, O.C. Davenport, Brian Barnes, and Rudy Carl, in their official and individual capacity as members of School District No. 203's Board of Education, alleging race discrimination in violation of Title VII, Section 1983, Section 1981, and the Fourteenth Amendment of the United States Constitution. Before this Court are cross-motions for summary judgment.

Summary judgment is proper if " the pleadings, depositions, answers to interrogatories, and admission on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). All the evidence and the reasonable inferences that may be drawn from the evidence is viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). However, the nonmovant must still come forward with evidence establishing the elements of her claim on which she bears the burden of proof at trial. As such, she must establish specific facts that show there is a genuine issue for trial. *Miller*, 203 F.3d at 1003.

Plaintiff, an African-American, applied for and did not receive a teaching position with the Naperville Community School District No. 203 (District 203). Plaintiff was an active applicant with District 203, beginning with the 1994 school year through February 1996. (Def.'s 56.1(a)(3) Statement ¶ 1). During the relevant time period, plaintiff held a valid Type 03 Illinois Teaching Certificate, which allowed her to teach elementary education, kindergarten through ninth grade. (Id., at ¶ 2). Plaintiff has a Bachelors Degree in Psychology and a Master of Education. She graduated with honors with a graduate grade point average over 3.6/4.0. (Plaint.'s 56.1(a)(3) Statement ¶ 4). Plaintiff had taught regular and special education students in Texas but had not taught as a full-time regular classroom teacher. (Id., at ¶ 5; Plaint.'s Dep. p. 53). Plaintiff's experience in Texas included teaching mathematics to grades first through fifth. (Id., at ¶ 6; Id., at p. 52).

District 203 is a public school system comprised of 21 elementary, junior high and high schools. The District is located in the City of Naperville, a far western suburb of the City of Chicago, in DuPage County, Illinois. The residents of DuPage County are predominantly white, non-Hispanic. (Def.'s 56.1(a)(3) Statement ¶ 7). On average, District 203 receives several thousand applications per year for its approximately 100 vacancies. Because of its prestige, District 203 receives applications from highly qualified teachers and is able to select only the most highly qualified candidates for employment. (Id., at ¶ 8). Due to the volume of employment applications, District 203 has developed an uniform procedure for processing and accessing teacher employment applications that includes the request that applicants complete an application and a Data Sheet that summarizes the applicant's qualifications and skills. (Id., at ¶¶ 9-10). Neither the application nor the Data Sheet request any information regarding an applicant's race. (Id., at ¶ 11). District 203's personnel enter the information from the Data Sheet into the District's applicant computer database.

(Id., at ¶ 12). An applicant who does not complete the Data Sheet is not included in the database, and the application is not considered for employment. (Id., at ¶ 13).

When a building principal has an available position, the principal notifies the District's personnel office; and the position is posted. (Def.'s 56.1(a)(3) Statement ¶ 16.) The building principal determines the criteria for the selection of candidates, which includes both general qualifications and those qualifications that are specific to the position. (Id., at ¶ 17). The District personnel office provides the building principal with a computer printout of every applicant in active status in the database who matches the criteria which the building principal selected. The printout includes all the information from the database on all such applicants. (Id., at ¶ 18). The principal then selects and reviews a number of applicant files based upon information from the database printouts. The principal may also consider any applications that the principal received directly from applicants. (Id., at ¶ 19). After comparing the applicant files to the criteria of the available position, the principal will then select a number of applicants whom the principal believes are most qualified for the position to interview. (Id., at ¶ 20). Of the applicants who are interviewed, the principal may select candidates for a second interview with building staff members, which may include teachers who will work with that position. The principal does not typically participate in the second interview. (Id., at ¶ 21). The staff identifies the applicant's strengths and weaknesses but does not rank the applicants. (Id., at ¶ 22). Building principals are not required to have applicants interview with the other teachers. Building principals have the discretion to make hiring decisions without input from the building staff and without requiring the applicant to interview with other building staff members. (Id., at ¶ 24). Candidates that are approved for hire by the Board of Education are required to undergo a criminal background check conducted by the Illinois State Police Department,

3

as required by Illinois law. (Id., at ¶¶ 28-29, 31). The Illinois State Police Department criminal background form requires the applicant to identify his or her race. (Id., at ¶ 32).

In the fall of 1994, plaintiff filed an application and Data Sheet with the District. (Def.'s 56.1(a)(3) Statement ¶ 34). Plaintiff was interviewed by Carol McGuff, the building principal, for a part-time Chapter One Mathematics position at Scott Elementary School. (Id., at ¶ 36). Chapter One is a federally funded program for students who are identified as below grade level or at-risk for a lack of success at their grade level. (Id., at ¶ 37). Based upon plaintiff's interview performance, Principal McGuff believed that plaintiff lacked the skills and knowledge necessary to succeed in the position. (Id., at ¶ 42). Specifically, plaintiff demonstrated, during the interview, that she had a limited base of current elementary mathematic strategies and techniques, including the incorporation of a variety of manipulatives. McGuff believed that plaintiff's repertoires of mathematical strategies were more suited to the needs of special education students rather than those students in the Chapter One Program. (Id., at ¶ 43). Although plaintiff performed poorly during the interview, McGuff allowed plaintiff to interview with the building staff because she was actively seeking minority candidates for Scott Elementary Schools. McGuff hoped that, rather than lacking the skills and experience she was seeking, plaintiff had merely interviewed poorly. (Id., at ¶ 48).

Plaintiff interviewed with three building staff members of Scott Elementary School. The other staff members were not informed of McGuff's doubts regarding plaintiff's competency. (Def.'s 56.1(a)(3) Statement ¶ 49). McGuff typically permits building staff members to participate in the interviewing process and to provide input regarding candidates' strengths and weaknesses. However, McGuff, alone, makes the hiring recommendation to the Assistant Superintendent for Personnel. (Id., at ¶ 50). The building staff members who interviewed plaintiff did not believe that

she possessed the skills and knowledge that they were seeking for the position. (Id., at ¶ 51). The individual hired for the position at Scott Elementary School had more than four years of experience teaching mathematics in both remedial and gifted programs; she trained teachers in the development of math curriculum and lesson planning for National Lewis University; she developed the mathematics strand of a gifted program and coached for the Math Counts Competition, and she was an active member and lecturer of the National Council of Teachers of Mathematics. (Id., at ¶ 52).

At approximately the same time, plaintiff was interviewed by Jack Hinterlong, the principal at Highlands Elementary School for a fifth-grade teaching position. (Def.'s 56.1(a)(3) Statement ¶ 56). Hinterlong attempts to have teachers with different areas of curriculum strength at each grade level so that each grade has a teacher with a strength in language arts, mathematics, social studies, and science and health. (Id., at ¶ 56). At the time of plaintiff's interview, the fifth grade team lacked a teacher with a strength in social studies. (Id., at ¶ 57). After interviewing plaintiff, Hinterlong determined that plaintiff did not meet the criteria he was seeking for the position and did not schedule a second interview. (Id., at ¶ 59). Hinterlong did not believe that plaintiff demonstrated adequate lesson planning and social studies integration that he was seeking for the open position. (Id., at ¶ 64). The applicant selected for the position had 13 years of experience teaching elementary education, the majority of which had been at the fifth grade level. (Id., at ¶ 66). The selected candidate received a Master's Degree in Elementary Education with a 4.00/4.00 grade point average. (Id., at ¶ 68). Plaintiff did not return a Data Sheet during the fall of 1995, resulting in her removal from the applicant database. Plaintiff had a valid application on file through February 17, 1996. (Def.'s 56.1(a)(3) ¶ 72).

I. Title VII Claims

A. Disparate Treatment Claim

To succeed with a Title VII claim, plaintiff must demonstrate that the employer took adverse employment action against her because of intentional discriminatory reasons. See *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 982 (7th Cir. 1999) (*Jackson*). Direct evidence is defined as "evidence 'which if believed by the trier of fact, will prove the particular fact in question without reliance on inference or presumption.'" *Plair v. E.J. Brach & Sons*, 105 F.3d 343, 347 (7th Cir. 1997) (citation omitted). In an employment discrimination case, direct evidence must speak directly to the issue of discriminatory intent, and it must relate to the specific employment decision in question. *Cowen v. Glenbrook Security Serv., Inc.*, 123 F.3d 438, 443 (7th Cir. 1997). Plaintiff has not presented any direct evidence of discrimination, and her response to defendants' Motion for Summary Judgment argues disparate treatment; thus, the focus is on the *McDonnell Douglas* burden-shifting method.

Under the *McDonnell Douglas* burden-shifting test, the plaintiff must first establish a prima facie case by the preponderance of the evidence. *Jackson*, 176 F.3d at 982. If the plaintiff establishes a prima facie case, a rebuttable presumption is created; and the employer must come forward with evidence of a legitimate, nondiscriminatory reason for its actions. If the employer meets this requirement, the burden shifts back to the plaintiff to demonstrate, again, by a preponderance of the evidence, that the reasons proffered by the employer are actually a pretext for discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973); *Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 394 (7th Cir. 1998) (*Adreani*).

To establish a prima facie case of discrimination in hiring, plaintiff must establish that: (1) she is a member of a protected class; (2) she applied for and was qualified for the position; (3) she

was rejected for the position; and (4) the defendant hired a person outside of the protected class with similar or lesser qualifications then plaintiff. *Gosh v. Indiana Dept. of Environment*, 192 F.3d 1087, 1090 (7th Cir. 1999).

Plaintiff has established that she is African-American, that she applied for teaching positions with District 203, that she possessed the required Yype 03 teaching certificate, that she was rejected for the position, and that the District hired non-African Americans with similar qualifications than plaintiff. Defendant argues that plaintiff was not qualified for the positions for which she interviewed and that the individuals hired did not have similar or lesser qualifications than plaintiff. At the minimum, plaintiff's qualifications, including her degrees, work experience, and teaching certification, demonstrate that material questions of fact exist as to whether plaintiff was qualified for the positions and, at a minimum, possessed qualifications similar to the individuals defendant hired.

If a plaintiff establishes a prima facie case, a rebuttable presumption is created; and the employer must come forward with evidence of a legitimate, nondiscriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802. Here, the District Board has come forward with legitimate, nondiscriminatory reasons for its actions – plaintiff failed to meet the requirements of the positions she was seeking and because she was not the most qualified applicant for the positions.

The burden now shifts back to plaintiff to demonstrate, again, by a preponderance of the evidence, that reasons proffered by defendant are actually a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804; *Jackson*, 176 F.3d at 982. A plaintiff can establish pretext by showing that the employer's explanation is unworthy of credence or that a discriminatory reason more likely motivated the employer. *Debs v. Northeastern Illinois Univ.*, 153 F.3d 390, 395 (7th Cir. 1998)

7

(*Debs*). Pretext in this context does not mean a mistake; rather, it means "a lie, specifically a phony reason for some action." *Russel v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir 1995). An honest belief in the nondiscriminatory reason offered by the decision-maker will be sufficient even if the reasons are foolish, trivial, or even baseless. *Debs*, 153 F.3d at 396.

Plaintiff argues that adequate evidence exists to support an inference that defendants' offered reasons for not hiring plaintiff were pretextual. Plaintiff first argues that defendants' conduct of giving false, inaccurate, and misleading information to the Court demonstrates pretext. Plaintiff alleges some of the affidavits submitted by defendants are false, and plaintiff finds the building principal's conclusion that plaintiff was not the most qualified "suspect." Plaintiff offers no proof that any of the information given to the Court or contained in the affidavits was false.

Plaintiff also alleges that the statistical evidence sufficiently proves discrimination. Statistical evidence can be used and can be useful to prove discrimination, "but it will likely not be sufficient in itself." *Adams v. Ameritech Services, Inc.*, 231 F.3d 414, 423 (7th Cir. 2000). Statistics standing alone cannot prove discrimination. *See Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000) (*Radue*); *Sapienza v. Cook County Office of the Public Defender*, __ F.Supp.2d __, __ (N.D.Ill. 2001) (2001WL59056) (*Sapienza*). "[S]tatistics can only show a relationship between an employer's decisions and the affected employees' traits; they do not show causation." *Radue*, 219 F.3d at 616. "'Statistical evidence which fails to properly take into account nondiscriminatory explanations does not permit an inference' of discrimination. A plaintiff must show 'disparate treatment between comparable individuals.'" *Radue*, 219 F.3d at 616-17, quoting *Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 987 (10th Cir. 1996).

In employment discrimination cases, the proper comparison is between the racial composition

8

of the at-issue jobs and the racial composition of the qualified population in the relevant labor market. *Wards Cove Packing v. Atonio*, 490 U.S. 642, 650 (1989). Not all measurable variables must be included in a statistical analysis. *Bazemore v. Friday*, 478 U.S. 385, 400 (1986). Interest in the jobs at issue and evidence of qualifications for those jobs are ordinarily important considerations for proof of discrimination and relevant to statistical analysis that finds such discrimination. *See EEOC v. Chicago Miniature Lamp Works*, 947 F.2d 292, 301-02 (7th Cir. 1991) (*Chicago Lamp*).

In the present case, plaintiff's expert performed three statistical analyses to determine whether there was a detectable relationship between race and employment in District 203. The expert compared the racial composition of District 203's teaching staff with the racial compositions of the teachers actually employed in the State of Illinois during the 1994-1995 school year. He also compared the racial composition of the teachers District 203 hired from 1990 through 1997 to the racial composition of the approximate labor pool of teachers in the Chicago Primary Metropolitan Statistical Area (Chicago PMSA). Last, he compared the racial composition of District 203's applicant flow data to the racial composition of the approximate number of teachers employed in the Chicago PMSA.

The analyses conducted by the plaintiff's expert took into consideration race and the number of teachers in the State of Illinois and those applying for positions in the state and the Chicago PMSA. The expert used the State of Illinois and the Chicago PMSA because it "seemed like a reasonable benchmark" and because he had a "suspicion" that most of the teachers that come into a district are within a state. The analyses did not take into consideration the applicant pool's interest in positions with District 203, and the only qualification considered was certification in the state.

In addition, the analyses did not attempt to take into consideration any nondiscriminatory reasons for the racial composition of District 203. Plaintiff's expert testified in his deposition that he was not familiar with the racial composition of the Chicago PMSA or where Naperville was within Illinois or any commuting patterns within the Chicago PMSA. Neither were any of these variables taken into consideration in the analyses. The expert's opinion is, therefore, materially flawed. Plaintiff admits that District 203 residents are predominantly white, non-Hispanic and that District 203 receives several thousand applications per year for its approximately 100 vacancies. Furthermore, because of its prestige, District 203 receives applications from highly qualified teachers and is able to select only the most highly qualified candidates for employment. These flaws in plaintiff's statistical analyses prevent an inference of discrimination and fail to raise a genuine issue of material of fact as to whether defendants' reasons for not hiring plaintiff were pretextual. *See Chicago Lamp*, 947 F.2d at 301-02; *Spanienza*, __ F.Supp.2d at __; *Allen v. Sunstrand Corp.*, 2000 WL 1335738 (N.D.Ill. Sept. 5, 2000);

Plaintiff also argues that she believes she was more qualified than the individuals hired for the positions for which she had interviewed. Plaintiff's argument is contrary to her deposition testimony in which she testified that she and the individuals hired were equally qualified. Defendants also presented evidence of the qualifications of the individuals that were hired and demonstrated, through those materials and affidavits, that those individuals met the qualifications the building principal sought in filling the position. Furthermore, this Court will not reexamine an employer's business decision or substitute the court's determination in place of the proper authority as to whom is more qualified for a position – even if the employer's decision is wrong, unfair, or unwise. *See Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir. 1986); *Debs*, 153 F.3d at 396.

10

Plaintiff also argues pretext is demonstrated by comparing the hiring of minority certified teachers in a different school district with the hiring practices of District 203. In essence, plaintiff attempts to compare the number of African-Americans and other minorities hired by one district to District 203. The comparison is made without any statistical analysis and without foundation that the compared school district is appropriate for such comparison. Accordingly, the comparison fails to raise the inference of discrimination and a material question of fact.

Based on the above facts, plaintiff has not established a genuine issue of material fact exists whether District 203's stated non-discriminatory reasons for not hiring plaintiff were a pretext to discrimination. District 203's Motion for Summary Judgment as to plaintiff's disparate treatment claim is granted.

B. Disparate Impact Claim

District 203 moves for summary judgment on plaintiff's disparate impact claim, arguing that plaintiff is barred from bringing the claim because she failed to allege it in her EEOC charge. Plaintiff filed a cross-motion for summary judgment on the disparate impact claim.

Generally, a plaintiff cannot bring Title VII claims that were not included in the EEOC charge. *See Alexander v. Garner-Denver Co.*, 415 U.S. 36, 47 (1974). Allowing a Title VII claim to include allegations outside the scope of the EEOC charge would "circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charges...." *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (7th Cir. 1985). There is significant leeway in determining whether an EEOC charge encompasses the claims in a complaint alleging Title VII violations because EEOC charges are usually drafted by laypersons. *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (*Cheek*). Accordingly, all Title VII claims in a

complaint are cognizable that are like or reasonably related to the allegations of the EEOC charge and those growing out of such allegations. *Cheek*, 31 F.3d at 500. Claims are alike or reasonably related if there exists a factual relationship between them. This requires, at a minimum, that the EEOC charge and the complaint describe the same conduct and implicate the same individuals. *Cheek*, 31 F.3d at 501.

Plaintiff alleges that her EEOC charge consists of an August 19, 1995 letter to the EEOC (August 19 Letter) and the formal October, 1995 charge. Defendants argue the August 19 Letter should not be considered part of plaintiff's charge because plaintiff has no proof the letter was sent, the EEOC has no record of receipt or the letter in its file, and defendant has no record of the letter in its file. Plaintiff has filed an affidavit averring that she mailed the August 19 Letter to the EEOC and received forms from the EEOC after speaking to the EEOC after they received the letter. At a minimum, a question of material fact exists whether the August 19 Letter is part of the charge. Therefore, it will be assumed that the August 19 Letter is part of plaintiff's charge.

To establish a prima facie case of disparate impact, plaintiff must identify an employment practice giving rise to a statistical disparity and then demonstrate causation between the practice and the statistical disparity. *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988); *McCraven v. City of Chicago*, 109 F.Supp.2d 935, 944 (N.D.Ill. 2000). The first step is to identify a specific employment practice. *Gilty v. Village of Oak Park*, 919 F.2d 1247, 1254 (7th Cir. 1990).

Plaintiff's formal EEOC charge alleges, in pertinent part, that plaintiff was "screened briefly by the principal ... who stated he was looking for a good match ... The principal [of a different school] called me for a second interview with an all-white hiring team." Plaintiff's August 19 Letter charges the school district with:

> Rejecting African-American teachers based on their race.
> Practicing a hiring system that excludes African-Americans from the team that selects and approves new teachers.
> Limiting African-American teachers to the lowest level teaching positions.
> Because African-Americans are limited to the lowest level teaching positions, they are thereby excluded from higher paying administrative positions.

Of plaintiff's allegations, the second charge of the August 19 Letter in conjunction with the formal EEOC charge that references an all-white hiring team could possibly claim discrimination based on disparate impact.[1] Plaintiff bases her allegation of a practice and policy of using "all-white hiring teams" from her interview at Scott Elementary School. Plaintiff offers no other evidence of a practice or policy of using all-white hiring teams. In addition, plaintiff does not address the fact that an all-white hiring team was not used in her interview at Highlands Elementary School. Plaintiff has not established a practice or policy of using all-white screening teams.

Assuming argumendo, that plaintiff could establish a practice or policy of using all-white hiring teams, plaintiff's claim still fails because she has not demonstrated a statistical disparity and causation between the practice and the statistical disparity because she relies on the same statistics discussed above. Also assuming argumendo, that the statistics were reliable and took into consideration all of the relevant variables, the statistics do not measure the impact of the practice of utilizing an all-white screening team. Rather, the statistics merely allege an under representation of minority teachers in District 203. However, under-representation statistics do not make out a prima

---

[1] In her Motion for Summary Judgment, plaintiff argues practices and policies of District 203 other than all-white hiring committees prove disparate impact. Plaintiff did not plead these other practices and policies and did not disclose them during discovery. Plaintiff cannot amend her complaint through a motion for summary judgment. *See Insolia v. Phillip Morris Inc.*, 216 F.3d 596, 606 (7th Cir. 2000). Therefore, only the alleged "all-white hiring team" allegation will be addressed.

13

facie case of disparate impact. *Gilty*, 919 F.2d at 1254. Defendants' Motion for Summary Judgment as to plaintiff's disparate impact claim is granted, and plaintiff's Motion for Summary is denied.

II. Section 1983 Claims

To establish a claim under § 1983, plaintiff must establish that she had a constitutionally protected right, that she was deprived of that right, and that the deprivation was caused intentionally by the defendant who acted under color of state law. 42 U.S.C. § 1983; *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 513 (7th Cir. 1993). Additionally, because plaintiff is basing her claim upon the Equal Protection Clause, she must establish intentional discrimination. *See Trautvetter v. Quick*, 916 F.2d 1140, 1149 (7th Cir. 1990).

A local governmental entity can be liable under § 1983 if: (1) the municipality has an express policy that, when enforced, causes a constitutional deprivation; (2) the municipality has a widespread practice constituting custom or usage that caused the constitutional deprivation; (*Kujawski v. Board of Commissioners of Bartholomew County*, 183 F.3d 734, 737 (7th Cir. 1999) (*Kujawski*)); or (3) a constitutional injury was caused by or ratified by a person with final policymaking authority. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Kujawski*, 183 F.3d at 737.

Plaintiff alleges that the Board of Education (Board) implemented a hiring policy that expressly stated, "they had no reason for recruiting Blacks, Hispanics, Native Americans, or Asians and Pacific Islanders," citing to the Board's hiring policy No. 4116. However, plaintiff is misquoting the policy. The policy states that the Board conducted a study and "found no sufficient factual basis for adopting an affirmative hiring and recruitment plan for Blacks, Hispanics, Native Americans or Asian and Pacific Islanders. Therefore, the District shall continue to recruit qualified minority

applicants and to hire qualified applicants on a non-discriminatory basis...." Contrary to plaintiff's argument, the policy does not state the District had no reason to hire minorities and does not establish an expressed policy or a widespread practice constituting custom or usage that caused a constitutional deprivation. In addition, plaintiff's allegations that all-white hiring teams caused her constitutional deprivation fails for the same reasons discussed above. Furthermore, plaintiff's § 1983 claim fails because she has not established a question of material facts exists whether the Board intentionally discriminated against her.

In order for plaintiff to hold the Board members individually liable under § 1983, plaintiff must establish that the individuals acted with deliberate or reckless disregard of plaintiff's constitutional rights or that the conduct that caused the constitutional deprivation occurred at the direction of or with the individual's knowledge or consent. *Brokaw v. Mercer County*, 235 F.3d 1000, 1012 (7th Cir. 2000). Plaintiff argues that her theory of individual liability is supported by the Board members deciding not to follow state law that required the development and implementation of a minority hiring plan, the implementation of policy No. 4116, statistical evidence, and leaving the hiring to the "unchecked discretion" of the "all-white supervisory corps."

Defendants admit that they were required by state law to adopt a minority hiring plan by 1991 and that their plan was not implemented until 1992. However, the Board's failure to implement a plan years before plaintiff applied for a position with District 203 does not establish a violation of plaintiff's § 1983 rights. In addition, the plan adopted by the Board in 1992, No. 4116, did not inform administrators that there was no reason to hire minorities, as discussed above. Plaintiff also cites statistics that support an inference of intentional discrimination. However, the only statistics the Board was aware of were through a study commissioned by the Board in an effort to comply with

15

Illinois law. This study showed that the Board's hiring practices had not resulted in an under representation of minorities. The Board's reliance on building principals and other members of the schools to conduct interviews and recommend whom to hire does not constitute deliberate or reckless disregard of plaintiff's constitutional rights, nor did such conduct cause a constitutional deprivation of plaintiff's right at the direction of or with the Board's knowledge or consent. Lastly, plaintiff did not establish that individuals were hired by all-white hiring teams as discussed above or that any of the Board members knew of any discrimination. Defendants' Motion for Summary Judgment as to the § 1983 claims against individual board members is granted.

III. Section 1981 Claim

The same standards that governed liability under plaintiff's Title VII claim apply to her § 1981 claim. *Gonzalez v. Ingersoll Milling Machine Co.*, 133 F.3d 1025, 1035 (7th Cir. 1998). As in her Title VII claim discussed above, plaintiff provides no direct evidence of discrimination, and she failed to present evidence contradicting the Board's nondiscriminatory reason for not hiring her. Defendants' Motion for Summary Judgment as to plaintiff's § 1981 claim is granted.

IV. Fourteenth Amendment Claim

No direct cause of action under the Fourteenth Amendment exists. A litigant must proceed under § 1983. *Baxter v. Vigo City School Corp.*, 26 F.3d 728, 732 n.3 (7th Cir. 1994). Accordingly, defendants' Motion for Summary Judgment as to plaintiff's Fourteenth Amendment claim is granted.

Defendants' Motion for Summary Judgment is granted on all claims, and plaintiff's Motion for Summary Judgment is denied.

Dated: 3/15/01

JOHN W. DARRAH
United States District Judge